**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**
**BANGOR DIVISION**

U.S. DISTRICT COURT
DISTRICT OF MAINE
BANGOR
RECEIVED & FILED

2021 APR 27 ₽ ₂ 55

DEPUTY CLERK

Case No. 1:20-cv-00466-LEW-JHR

**FIRST AMENDED COMPLAINT**

CLINTON STRANGE,

*Plaintiff*

Honorable Lance E. Walker

U.S. District Court Judge

JUICE MAN,

*Defendant*

John H. Rich, III

U.S. Magistrate Judge

~~~Trial by Jury Demanded ~~~

**FIRST AMENDED CIVIL ACTION COMPLAINT**

**FOR VIOLATIONS OF:**

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991;**

**THE FAIR DEBT COLLECTION PRACTICES ACT OF 1977;**

**THE GEORGIA FAIR BUSINESS PRACTICES ACT OF 1975;**

**&**

**THE GEORGIA UNFAIR OR DECEPTIVE PRACTICES TOWARD THE ELDERLY**
**ACT OF 1981**

**PRELIMINARY STATEMENT:**

1.  The *pro se* Plaintiff CLINTON STRANGE ("PLAINTIFF') brings this private
    enforcement action in good faith against Defendants JAMAL ROBINSON ('JAMAL
    ROBINSON"); SHARIF ROBINSON ("SHARIF ROBINSON"); GMR PROCESSING
    LLC ("GMR"), and A.P.E. PROCESSING LLC ("APE"), for violations of the Federal
    Telephone Consumer Protection Act of 1991 ("TCPA"), the Fair Debt Collection
    Practices Act of 1977 ("FDCPA"), and the laws of the State of Georgia.

2.  The Plaintiff seeks a maximum award of actual, statutory and or punitive damages,
    injunctive relief, costs expenses and fees associated with bringing and litigating the
    action to judgment, and post judgment interest on judgment.

**JURISDICTION & VENUE:**

3.  **Jurisdiction** primarily arises in this U.S. District Court under a federal question as the
    TCPA and the FDCPA are federal statutes pursuant to 28 U.S. Code § 1331.

4.  **Supplemental Jurisdiction** would be properly applied in this action because the
    Plaintiff's Georgia State Law claims arise out of the same actions and omissions (same
    set of circumstances and operative facts) that are under federal question jurisdiction
    pursuant to 28 U.S. Code § 1367.

5.  **Venue** lies proper in this U.S. District because defendant utilized a "local presence"
    Direct Inward Dial number assigned to a VoIP Telecommunications service via a local
    carrier exchange associated with Kennebec County, Maine [used to] autodial the
    Plaintiff's cellphone number pursuant to 28 U.S. Code § 1391.

**THE PARTIES:**

6.  **Plaintiff CLINTON STRANGE** is a natural person, age 47, residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

7. **Defendant JAMAL ROBINSON** is a natural person, age 46, residing in or around

Gwinnet County, Georgia. This Defendant's last known address was:

JAMAL ROBINSON

643 Lake Knoll Drive NW

Lilburn, Georgia 30047-8709

8. **Defendant SHARIF ROBINSON** is a natural person, age 45, residing at the address of:

SHARIF ROBINSON

2675 PADDOCK POINT PL

DACULA, GA 30019-7572

9. **Defendant GMR PROCESSING LLC** is a Georgia Domestic Limited Liability

Company. According to the Georgia Corporations Division, this Defendant maintains a

principal place of business, and a Georgia registered agent at the addresses of:

GMR PROCESSING LLC

375 Rockbridge RD NW

Suite172-215, Lilburn, GA, 30047

&

CEASAR D. RICHBOW, Esquire

c/o: GMR PROCESSING LLC

3645 Marketplace Blvd Ste 130 - 294

East Point, GA, 30344-5747

10. **Defendant A.P.E. PROCESSING LLC** is a Florida Domestic Limited Liability

Company and a successor by conversion from a Georgia Domestic Limited Liability

Company by the same name. According to the Florida Division of Corporations this

Defendant maintains a principal place of business and registered agent listed as:

A.P.E. PROCESSING LLC

66 West Flagler Street

Suite 900 - #2144

MIAMI, FL 33130

&

INCORP SERVICES, INC

c/o: A.P.E. PROCESSING LLC

17888 67TH CT. NORTH

LOXAHATCHEE, FL 33470

**FACTUAL ALLEGATIONS:**

The Decade Old Scheme

11. A '*Juice Man*' is a 1950's era slang term for a debt collector.

12. Defendants, along with other entities and individuals to be identified in discovery, are

involved in a fraudulent, ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the

country who allegedly have failed to repay debts (or as in the past payday loans). This

scheme, operated by defendants as well as many other entities located in and around

Buffalo, New York, Atlanta, Georgia and Charlotte, North Carolina, is based on the use

of a script, sometimes known as "The Shakedown" or "The Shake," that includes

variations of the following: The caller calls from a blocked number or uses a telephone

number with the consumer's area code, pretends to be a local process server, states to the

consumer that "charges" have been filed against the consumer for "breach of contract" or

"defrauding a financial institution" and represents that the caller is attempting to locate

and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll-free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often times, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mailboxes.

13. The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants. See also the complaint filed by the United States of America against Williams Scott & Associates, LLC et al., U.S.

District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which

the government alleged that the defendants located in Norcross, Georgia have

continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and

other laws, through a payday loan collection scheme that is indistinguishable from the

ongoing scheme being perpetrated by the defendants as alleged in this complaint. The

United States Department of Justice, the Federal Bureau of Investigation, the Federal

Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of

virtually every state, and the Better Business Bureau ("BBB") all have issued press

releases that warn consumers about this ongoing scam.

14. Reliance Exchange Group LLC ("REG") was an active Georgia limited liability

company. REG did business at 4500 Satellite Boulevard, Suite 2320, Duluth, Georgia

30096. REG had multiple registered agents, including Jamal Robinson, 4500 Satellite

Boulevard, Suite 2320, Duluth, Georgia 30096, and Incorp Services Inc., 2094

Myrtlewood Drive, Montgomery, Alabama 36111. REG maintained a private mailbox

(No. 202) that it rented from Easy Mail, located at 3455 Peachtree Industrial Boulevard,

Duluth, Georgia 30096. REG also did rent post office boxes from the United States Postal

Service, one at P.O. Box 234, Atlanta, Georgia 30092, and another at P.O. Box 2487,

Norcross, Georgia 30091. REG used interstate commerce and the mails in a business the

principal purpose of which was the collection of debts. REG regularly did collect or

attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. REG was a "debt collector" as the term is defined and used in the FDCPA. REG

did business under multiple assumed and unregistered names in order to conceal its

identity and the identities of the other defendants. Those assumed and unregistered names

included RG Financial, Reliant Group Financial, and Reliant Group Debt Management

Solutions. Defendants maintained an internet website for REG at

www.reliancexchange.com.

15. The website stated: "*Reliance Exchange Group is a premier debt collection agency that*

*specializes in the recovery of delinquent accounts for commercial, financial, retail,*

*insurance, education, and medical clients*." The website provided the following contact

information for REG: Email address – info@reliancexchange.com; mailing address –

P.O. Box 234, Atlanta, Georgia 30092; phone – 855-678-0748; fax – 888-554-5769. REG

also received payments at P.O. Box 897, Atlanta, Georgia 30092. Defendant Jamal

Robinson, when filing documents for REG with the State of Georgia, used as his email

address info@reliancexchange.com. The website instructed consumers wishing to make

payments on-line to call 800-790-6807, which is a telephone number that belonged to

defendant A.P.E. Processing LLC (APE). Defendants maintained another internet website

for REG at www.rgfinancialus.com. The website stated: "*Welcome to Reliant Group*

*Debt Management Solutions. . . . We have been recovering debt for a variety of*

*businesses as well as specializing in PayDay debt collections since 2008*." The website

falsely claimed that defendants were members of a debt collector trade group named

ACA International. The website provided the following contact information: Email

address – info@rgfinancialus.com; and mailing address – RG Financial, P.O. Box 259,

Norcross, Georgia 30091. In May of 2015, the website provided a contact telephone

number of 888-679- 4309. On August 21, -2015, the contact telephone number was

changed to 888-704-3493. The website provided a fax number of 888-554-5769, which

was the same fax number listed on the website for www.reliancexchange.com. REG also

used telephone numbers 678-661-5467, 615- 523-0690, 931-347-4851 and 866-372-8037.

16. The Better Business Bureau of Atlanta, Georgia, on a scale of A+ to F, gave REG a rating of "F", based on the 46 consumer complaints listed on the BBB website (In October 2015) that described the same unlawful debt collection tactics that are described in this complaint. Defendant A.P.E. Processing LLC ("APE") was an active Georgia limited liability company. APE was organized on April 9, 2009 by defendants Sharif Robinson and Jamal Robinson.

17. Sharif Robinson on behalf of APE filed a 2015 Annual Report with the State of Georgia, claiming that the principal place of business for APE was located at 3455 Peachtree Industrial Boulevard, "Suite 305-202," Duluth, Georgia 30096, but the address was merely a private mailbox rented by defendants from a company named Easy Mail, which APE shared with REG and the other defendants. Upon information and belief, APE actually did business at 4500 Satellite Boulevard, Suite 2320, Duluth, Georgia 30096. The registered agent for APE was Miriam Cross, 3455 Peachtree Industrial Boulevard, "Suite 305-202," Duluth, Georgia 30096. APE used interstate commerce and the mails in a business the principal purpose of which is the collection of debts. APE regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

18. Defendant and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent consumer debts, as well as to collect money in connection with accounts they

do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Georgia law), and that include the use of scripted threats of faked litigation and criminal extortion, and that include demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons. The criminal enterprise remains active and ongoing.

<u>Defendants are Debt Collectors Under the FDCPA</u>

19. Defendant APE is a "debt collector" as the term is defined and used in the FDCPA.

20. During all times pertinent hereto, APE directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Plaintiff that are described in this complaint.

21. APE is the payment processor arm of the scheme.

22. GMR is the operational arm of the scheme that employs the agents servants and or employees who answer the phones from worried and confused consumer debtors like the Plaintiff and read from the shake down scripts.

23. Defendant GMR is a "debt collector" as the term is defined and used in the FDCPA.

24. During all times pertinent hereto, GMR directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Plaintiff that are described in this complaint.

25. According to GMR employee Tiffany Ray's LinkedIn profile she is a "debt collector" for Defendant GMR and has been since on or around June 2010. See

https://www.linkedin.com/in/tiffany-ray-69778815a - page last visited 04/23/2021 at 6:12am CST.

26. Defendant Sharif Robinson is a natural person, age 45, residing at 2675 Paddock Point Place, Unit L, Dacula, Georgia 30019-7572. Mr. Robinson is an owner, officer, member, manager, employee and/or agent of (among other entities) APE and or GMR. Sharif Robinson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Sharif Robinson regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Sharif Robinson is a "debt collector" as the term is defined and used in the FDCPA. Sharif Robinson is the Secretary for Defendant GMR, and an Authorized Member of APE.

27. Jamal Robinson is a "debt collector" as the term is defined and used in the FDCPA.

28. Jamal Robinson is and or was the [named] enduser subscriber of the Direct Inward Dial VoIP Telephone number used to place an autodialed call to the Plaintiff's cellphone number 318-423-5057 on September 23, 2019 at 1:17pm CST.

29. Jamal Robinson is an owner, officer, member, manager, employee and/or agent of (among other entities) APE and or GMR. Jamal Robinson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Jamal Robinson regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.

30. Jamal Robinson (a) created the collection policies and procedures used by APE and GMR and their employees and agents, (b) managed the daily collection operations of APE and GMR (c) oversaw the application of the collection policies and procedures used by APE and GMR and their employees and agents, (d) ratified the unlawful debt collection

policies and procedures used by APE and GMR and their employees and agents, as well as the other defendants to this lawsuit, and I had knowledge of, approved and ratified the unlawful debt collection practices used by APE and GMR and their employees, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Plaintiff as described in this complaint.

31. Sharif Robinson (a) created the collection policies and procedures used by APE and GMR and their employees and agents, (b) managed the daily collection operations of APE and GMR (c) oversaw the application of the collection policies and procedures used by APE and GMR and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by APE and GMR and their employees and agents, as well as the other defendants to this lawsuit, and I had knowledge of, approved and ratified the unlawful debt collection practices used by APE and GMR and their employees, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Plaintiff as described in this complaint.

32. As stated above, defendants have registered multiple internet domain names to use in connection with their unlawful debt collection scheme. Those internet domain names include the following: www.reliancexchange.com, at www.rgfinancialus.com, www.reliantgroupus.com and www.apeprocessing.com. Defendants registered each of these internet domain names through non-party Frederick J. Ross, also known as "Rick" Ross, doing business as Buffalo Technology Solutions. Mr. Ross uses as residential addresses, 6271 Bridlewood Drive South, East Amherst, New York 14051-2033, 1420

River Station Drive, Lawrenceville, Georgia 30045- 2750 and 3651 Evans Mill Road,

Lithonia, Georgia 30038-3404. Mr. Ross uses as his email address, fjross20@msn.com.

In addition to the internet domain names listed above, Mr. Ross has registered numerous

other internet domain names for other debt collection operations, many of which use the

same unlawful debt collection practices that are described in this complaint. Some of

those additional internet domain names include the following:

www.titonreceivables.com, www.tritonventuresbilling.com, www.bvwprocessing.com,

www.nationaldocusign.com, www.usdocusign.com, www.americancreditadjusters.com,

www.premiererecoverygroup.com, www.globalprocessingsolutionsinc.com,

www.gmrprocessing.com, www.genuinedebtsolutions.net and www.directresolution.info.

It will need to be determined in discovery what role, if any, Mr. Ross and the companies

that are related to these internet domain names played in defendants' unlawful efforts to

collect an alleged debt from Plaintiff.

<p align="center">The Documented Incidents on September 23, 2019</p>

33. Plaintiff is a consumer debtor that *currently* owes or is alleged to owe debt obligations on

what is termed under Louisiana law "an open account" (credit card debt) to at least one

creditor based on transactions arising from the purchase of consumer products, goods,

and or services primarily for household use.

34. During the years of 2018, 2019, and the early part of 2020 the Plaintiff had defaulted on

roughly $65,000 in consumer credit card debt and was discussing with his VA Mental

Health Practitioners and Vocational Rehabilitation Counselors how his situation was

affecting his service-connected mental health conditions and exploring bankruptcy

options.

35. He was embroiled in (a Defendant in) Five (5) civil lawsuits in Louisiana State Court
Debt Collection Cases between the time period relevant to the instant action which was
between September 2019 and March 2020 that were in various stages of litigation and
disposition.

36. Plaintiff represents that his Physical and Mental Health were in decline at that time [in
which the Defendant interacted with Plaintiff] because he had finally began to succumb
to his service-connected disabilities to the point where he had left full time employment
with Sears Roebuck & Co.("SEARS") in a leadership position, tried to maintain
employment with Sears as a contractor, but ultimately could not continue to work due to
[his] Mental and Physical service-connected disabilities.

37. Because the Plaintiff was no longer employed or employable or otherwise able to earn
income, he defaulted on his credit card debt and used the little income he had derived
from VA disability benefits in order to barely subsist.

38. On September 23, 2019 at 1:17pm CST the Plaintiff received a call on his cellphone
(number 318-423-5057) from a number appearing on his Caller ID as 207-213-1147 that
was placed or initiated by the Defendants that (when Plaintiff answered) played a
prerecorded voice message indicating that the call was concerning debt collection.
Plaintiff represents that the image below labeled Figure A is a true and accurate
representation of a screen capture [screen shot] of his cellphone in reference to calls
between himself and the Defendant.



**Figure A**

39. As shown and referenced above (in the image Labeled Figure A) the Plaintiff phoned

back to the Defendant on September 23, 2019 at 1:29pm CST and spoke with and agent

who sounded to Plaintiff like a Caucasian Female aged 30-50 who told Plaintiff that the

call was monitored or recorded and indicated that Defendants ("The Law Offices of the

Highland Firm") was attempting to collect a roughly $1,200 debt on a Visa Gold Card

Account # [Redacted pursuant to F.R.Civ.P. 5.2 and Maine LR 5] XXXX-XXXX-

XXXX-4631, and  during the above referenced call (lasting just under ten minutes), the

Plaintiff was told that the Defendants would settle if Plaintiff paid $413 right then.

Plaintiff asked questions about the alleged debt and was told that it was defaulted on in

2012. Plaintiff stated to the agent that he wanted to receive validation of the debt. The

agent asked to verify his mailing address.

40. The agent stated that what she had on file was 10550 Cook Road # 78, Bethany Louisiana

71007. Plaintiff gave his new address in Greenwood, Louisiana and the agent then began

to press the Plaintiff to make statements that might tend to validate the debt or

alternatively re-age the debt [if it was ever even valid] ; when Plaintiff refused the agent

became rude and ugly and said she / her firm was going to file a civil lawsuit against the

Plaintiff and take [other] legal action against the Plaintiff for felonies [felony theft].

41. Plaintiff is unaware of *any* civil or criminal actions pending against *him* at this time for

either civil or criminal violations (apart from the open account suits).

42. Defendants' phone number appearing on Plaintiff's Caller ID geographically indicated

that the Caller (Defendants) were located in Kennebec County, Maine as detailed below:



https://www.area-codes.com/exchange/exchange.asp?npa=207&nxx=213 – page last visited
03/22/2020 at 08:06 CST

43. Defendant directed its *alleged* misconduct toward consumers in Maine along with no less

than two (2) other states including Texas, and the Commonwealth of Virginia as shown

below:



https://www.reportedcalls.com/2072131147

page last visited 03/22/2020 at 05:30 CST

44. Defendants have *allegedly* contacted numerous other consumers using the name

"Highland Firm" and similar names which has resulted in Better Business Bureau (BBB)

Complaints on an *innocent* Alabama Law Firm filing a response indicating that [they]

were not responsible for the calls, and must have been so rampant and voluminous that it

resulted in that law firm not only reporting the situation to the U.S. Department of Justice

- Federal Bureau of Investigations (FBI), responding to the BBB complaints, but also

changing its entire homepage on their website to address the calls being made to

consumers by Defendants or Defendants' agents as shown below:



https://www.bbb.org/us/al/birmingham/profile/lawyers/the-highland-law-firm-llc-0463-
90029726/complaints
page last visited 12/04/2020 at 4:46pm CST



https://www.highlandlawfirm.com/
page last visited 12/04/2020 at 4:58pm CST

45. The screen capture above [published and reproduced with oral limited permission of the

copyright owner granted via telephone conference on 12/04/2020 at 6:03pm CST] details

the posted message on the innocent Alabama Law Firm's Homepage:

*SCAM ALERT*

*"It has come to my attention that someone*
*is using the name of the Highland Law Firm*
*as part of a scam to get people*
*to pay money on a fictitious debt.*
*Apparently, someone is contacting people*
*all across the country threating to*
*bring legal action against individuals*
*if they do not tender payment on a debt.*
*The call is alleging they work for the*
*Highland Law Firm.*
*THIS IS A SCAM, the Highland Law*
*Firm does not represent clients in a debt collecting*
*capacity and it is not our practice to collect*
*money over the phone or threaten individuals*
*with litigation for non-payment of debts.  I*
*am truly saddened that someone would use the*
*name of our firm for illegal gain."*

46. Autodialed Robocalls that play pre-recorded voice messages annoy the Plaintiff really

bad. The Defendant's initial call upset, annoyed, and bothered the Plaintiff. The Chief

Justice of the United States Supreme Court recently stated during Oral Arguments in

William P. Barr, et al. v. American Association of Political Consultants, et al. [citation

omitted] "It's an extremely popular law. Nobody wants to get robocalls on their cell

phone." Justice Kavanaugh explicitly said as much also, telling the attorney representing

the petitioners that "this is one of the more popular laws on the books because people

don't like cell phone robocalls. That seems just common sense."

<u>The Incidents Occurring After September 23, 2019</u>

47. As mentioned above the Plaintiff was a party to debt collection litigation in (5) Debt

    Collection Lawsuits around the time that Defendant threated criminal charges against

    Plaintiff. The way service of Pleadings and papers in civil actions is effected in Louisiana

    generally (absent an approved motion to appoint a private server) is that an armed and

    uniformed Parish Deputy is tasked with serving those documents on parties to the action.

    After the Defendant's call the Plaintiff would get nervous, anxious, and paranoid on the

    over 6 occasions [following the calls] when a Caddo Parish Sherriff Deputy came to his

    home to serve him papers. On each of those occasions the Plaintiff would wonder if this

    would be the occasion when the Caddo Parish Sheriff's Deputy was coming to effect a

    felony arrest [of the Plaintiff].

48. On or around June 13, 2020, Defendant GMR was approved for a U.S. Small Business

    Administration Paycheck Protection Program (PPP) Loan in the amount of $20,833

    through a participating lender, Kabbage, Inc.

    (https://projects.propublica.org/coronavirus/bailouts/loans/gmr-processing-llc-

    3112297902)

49. It *angers* the Plaintiff that his federal tax dollars were used to fund this ongoing unlawful

    conspiratorial scheme.

<u>The Plaintiff's Harm and Injuries</u>

50. Threatening the Plaintiff [with criminal prosecution] also got the Plaintiff worried about

    the loss, or alternatively the prolonged interruption, of his hard sought VA benefits (both

    Financial and Medical); his ability to obtain a Louisiana Hunting License; his right to

bear firearms and possibly having to relinquish his firearms; loss of his right to vote in the 2020 election, and more importantly the loss of his freedom and liberty.

51. The Defendant's pre-existing service-connected disabilities were aggravated and or made worse by the Defendants' actions and omissions as detailed in this complaint.

52. The Plaintiff endured worse symptoms of Erectile Dysfunction, Major Depressive Disorder, sleep disturbance, and panic attacks (among others) because of Defendants actions and omissions.

## THE COUNTS AND CAUSES OF ACTION:

## COUNT I:

## (Plaintiff v. All Defendants)

## THE FAIR DEBT COLLECTION PRACTICES ACT OF 1977

## 15 U.S.C. § 1692 *et seq.*

53. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

54. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

55. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Georgia law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

56. As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

57. Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following: a) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; b) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; c) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and d) Defendants violated 15 U.S.C. § 1692g.

58. All Defendants are jointly and severally liable to Plaintiff for *actual* damages pursuant to 15 U.S.C. § 1692k(a)(1); b) *Statutory* damages pursuant to 15 U.S.C. § 1692k(a)(2)(A); c) his reasonable Costs and fees pursuant to 15 U.S.C. § 1692k(a)(3); and d) Such further relief as the court deems just and proper under this Count.

## COUNT II:

### (Plaintiff v. All Defendants)

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47  U.S. Code. § 227(b)

59. The Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

60. Defendants violated subsection b of the TCPA's autodialed call restrictions to a cellphone without the consent of the called party and absent an established business relationship and without a permissible purpose. See 47 U.S.C. § 227(b)(1)(A)(iii). The Defendant's call played a pre-recorded voice message at the beginning of the call triggering the pre-recorded voice component of the statute cited herein. Although not binding on this Court, the Fifth U.S. Circuit found in *Ybarra v. Dish Network, L.L.C.*, No. 14-11316, (5th Cir. Oct. 20, 2015) "To be liable under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play:… the TCPA makes it unlawful to make any call using an 'automatic telephone dialing system.' In contrast, it is not unlawful under the TCPA to make a call using an artificial or prerecorded voice system. Rather, what is precluded by the TCPA is making a call using 'an artificial or prerecorded voice."

61. Defendant is liable to Plaintiff for damages of $500 if the Court or trier of fact determines that the Defendant's conduct was committed negligently pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff alleges that the Defendant's conduct was carried out in a willful and knowing manner and seeks $1500 under this Count pursuant to the trebling provision of the statute pursuant to 47 U.S.C. § 227(b)(3)(C).

63. Plaintiff is entitled to and seeks permanent injunctive relief enjoining Defendant from future violations of this statute pursuant to 47 U.S.C. § 227(b)(3)(A).

## COUNT III:

### (Plaintiff v. All Defendants)

### THE GEORGIA FAIR BUSINESS PRACTICES ACT OF 1975

### Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 *et seq.*

64. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at
length herein.

65. Georgia's statute (GFBPA) has *not* been found to be pre-empted by Federal Statutes. See
*McLAIN v. MARINER HEALTH CARE, INC*. No. A06A0923 (Court of Appeals of
Georgia.) (May 15, 2006) (Quoting) *New York State Dept. of Social Svcs. v. Dublino*, 413
U.S. 405, 421(II), 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) ("Where coordinate state and
federal efforts exist within a complementary administrative framework, and in the pursuit
of common purposes, the case for federal pre-emption becomes a less persuasive one.").

66. Plaintiff hopes to persuade the Court that Georgia Law applies to the September 23, 2019
calls from and to Defendants. Plaintiff cites to an out of Circuit decision from the Middle
District of Georgia where the Chief Judge of that District addresses whether a violation of
the FDCPA violates Georgia law as reasoned by that Court in *Moody v. Synchrony Bank*
No. 5:20-cv-00061-MTT DE *11 (M.D. Ga.) (Sept. 29, 2020) finding "it is well
established that a violation of the FDCPA also violates the GFBPA. *1st Nationwide
Collection Agency, Inc. v. Werner*, 288 Ga.App. 457, 459, 654 S.E.2d 428, 431 (Ga. App.
2007); see *Gilmore v. Account Mgmt., Inc.,* 357 F. App'x 218, 220 (11th Cir. 2009)
("Werner also supports the conclusion that Account Management necessarily violated
Georgia's FBPA when it violated the FDCPA."); *Shurley v. McNeil & Meyers Asset
Mgmt. Grp. LLC,* 2018 WL 4053326, at *3 (M.D. Ga. Aug. 24, 2018) ("a violation of the

FDCPA is also a violation of the GFBPA") (citing cases); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293, 1300 n.6 (N.D. Ga. 2010) ("Violation of the FDCPA is sufficient to create a violation of the GFBPA")."

67. Plaintiff relies on the discretion of the Court or trier of fact to award damages that is finds to be reasonable for each and every violation up to $1,000 per violation.

<div align="center">

**COUNT IV:**

**(Plaintiff v. All Defendants)**

**THE GEORGIA UNFAIR OR DECEPTIVE PRACTICES TOWARD THE ELDERLY ACT OF 1981 //   O.C.G.A. § 10-1-850 *et seq.***

</div>

68. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

69. Plaintiff can show that both the State of Louisiana and the U.S. Department of Veterans Affairs have decided that since December 2017 the Plaintiff is totally and permanently disabled. Plaintiff receives VA benefits monthly at above the 100% rate due to his service-connected disabilities. Plaintiff represents that he is a disabled person as defined by O.C.G.A. § 10-1-850 (1) "Disabled person" means a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities. As used in this paragraph, "physical or mental impairment" means any of the following:

(A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs;

cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; or endocrine; and

(B) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech, and hearing impairment, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, and emotional illness.

(2) "Elder person" means a person who is 60 years of age or older.

(3) "Major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(4) "Substantially limits" means interferes with or affects over an extended period of time. Minor temporary ailments or injuries shall not be considered physical or mental impairments which substantially limit a person's major life activities. Examples of minor temporary ailments are colds, influenza, or sprains or minor injuries.

70. Plaintiff represents that he can check all of the above boxes (except for subpart 2 because he is 47 years old) and is a Disabled person under Georgia Law.

71. Defendants knew or reasonably should have known that their relentless violative misconduct might cause harm to a certain percentage of disabled persons in their allegedly unfair debt collection campaign activities.

72. Pursuant to the provisions of O.C.G.A. § 10-1-851 the Plaintiff respectfully requests that the Court in its discretion would award Plaintiff up to $10,000 for each and every violation that it finds Defendants liable for under this cause of action. Plaintiff represents

that it was the Georgia Legislative intent that an enhanced civil penalty would apply to causes of action such as this by drafting the statute to read "When any person who is found to have conducted business in violation of Article 15, 17, or 21 of this chapter is found to have committed said violation against elder or disabled persons, in addition to any civil penalty otherwise set forth or imposed, the court may impose an additional civil penalty not to exceed $10,000.00 for each violation."

### PRAYER FOR RELIEF:

**Wherefore**, the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants based on the following requested relief:

Statutory Damages;

Actual Damages;

Enhanced Civil Penalties;

Punitive Damages;

Pre and or Post Judgment Interest on Judgment;

Injunctive Relief enjoining Defendants from future violations;

&

Such other and further Relief the Court deems necessary, just and proper.

Respectfully Submitted,

X _Clinton Strange_                     4-23-2021
Clinton Strange                              Dated
Pro Se
7021 Winburn Drive
Greenwood, LA 71033
(318) 423-5057
StrangeC982@gmail.com